**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

JUSTIN GOULD AND
ADINA GOULD,

Plaintiff,

v. Civil Action No.: 1:21-CV-21377

CERTAIN UNDERWRITERS AT LLOYDS
OF LONDON,

Defendant.
_______________________________________/

**DEFENDANTS CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. B1180D160620/755FtL'S MOTION FOR SUMMARY JUDGMENT**

Certain Underwriters At Lloyd's, London Subscribing to Policy No. B1180D160620/755FtL ("Underwriters") files their Motion for Summary Judgment and Incorporated Memorandum of Law, as follows:

## I. INTRODUCTION

This is an insurance coverage dispute arising from Hurricane Irma. Justin and Adina Gould (collectively the "Goulds" or "Plaintiffs") filed this lawsuit to recover for damages to their home allegedly sustained during Hurricane Irma. As an initial matter, the Goulds first notified Underwriters of the alleged damages to their home in January 2020, nearly two and a half years after the storm. Because the Gould's failed to provide notice timely as required under the Policy and Florida, their claims are barred as a matter of law and Underwriters are entitled to summary judgment.

Even if the Goulds had provided timely notice of their Hurricane Irma claims, they have completely failed to produce any evidence necessary to meet their burden of proof in

this case. In fact, the Goulds have done nothing since filing this case. The Goulds have not served initial disclosures identifying any witnesses or documents they intend to rely upon to support their claims. The Goulds did not participate in discovery nor disclose any experts, including any expert witness that will opine as to the cause and scope of their claimed damages as required under Florida law. Without any evidence or expert testimony, the Goulds cannot meet their burden of showing that a covered loss damaged the property during the policy period, must less a covered loss exceeding the Policy's exceeding the Policy's $180,587.50 wind deductible. Since the Goulds have no evidence to meet their threshold burdens in this case, Underwriters are entitled to summary judgement.

## II. FACTUAL BACKGROUND

For the Court's convenience, Underwriters summarizes the undisputed facts here. For a full recitation, please refer to their Statement of Undisputed Material Facts ("SOMF"), filed contemporaneously with this motion.

In this insurance coverage dispute, the Goulds seek to recover under their policy for alleged property damage to their home that they allege occurred during Hurricane Irma on or around September 10, 2017. [SOMF, 8-11]. Underwriters acknowledge that the Goulds did make a claim for the removal of tree debris only in late 2017, which Underwriters paid. [SOMF, 9]. The Goulds, however, never notified Underwriters of the alleged extensive damages to their home until January 2020 after they hired a public adjuster. [SOMF, 11].

After receiving notice of the Goulds' claim for damage in their home in January 2020, Underwriters investigated the Goulds' new claims. Underwriters took Mr. and Mrs. Goulds' Examinations Under Oath, in which the Goulds admitted that they had not contacted Underwriters regarding the alleged damage at the Property since making their initial tree

debris removal claim in 2017. [SOMF, 11]. True and correct copies of the Goulds' Examination Under Oath Transcripts are attached to Underwriters Statement of Material Facts as Exhibits B and C. In those examinations, the Goulds also stated that they had performed repairs to the property's roof and interior between 2018 and 2020, again, with no notice to Underwriters. [SOMF, 12].

The Goulds filed suit against Underwriters in Florida on March 22, 2021. [cite]. Underwriters removed the case to this Court. [SOMF, 17]. The Goulds' filed a two count Complaint. *Id*. Count I is for declaratory relief asking the Court to interpret the Policy and determine the parties' respective rights and obligations in connection with the Goulds' late reported Irma claim. *Id*. Count II is a straightforward first-party insurance breach of contract action. *Id*. Underwriters answered rejecting the Goulds' allegations and raising numerous affirmative defenses, including, but not limited to, that the Goulds' claims were barred by their failure to comply with the Policy's duties and obligations in the event of loss or damage. [SOMF 10-11, ECF, 10].

The Court entered the Scheduling Order for this case on May 14, 2021 [SOMF 15, [ECF, 8]. Relevant here, the Order directs the parties to complete discovery by July 26, 2021 (including experts). *Id*. Both parties were required to disclose any experts by June 28, 2021. *Id*. Underwriters disclosed their expert witness in compliance with the Court's Order. [SOMF, 18].

Since filing this lawsuit, the Goulds have done nothing to prosecute the case.[1] The Goulds did not serve Initial Disclosures as required under Federal Rule of Federal Procedure

[1] The only action the Goulds have taken in this case is to file an improper and unsupported motion to compel appraisal of their extremely late report Hurricane Irma claim now almost four years after the alleged loss. [ECF, 11]. Underwriters refer the Court to their response to that motion.

26. Consequently, the Gould have not identified any witness they will offer to support their claims, they did disclose any documents they may use to support their claims, and they did not produce a computation of their claimed damages nor the documents the computation is based. The Goulds also did not disclose any experts before the Court's June 28, 2021 deadline. [SOMF, 21]. The Goulds served no discovery and took no depositions. When Underwriters disclosed their own expert, they reminded the Goulds that they did not serve their required Initial Disclosures [SOMF, 19]. The Goulds did not respond.

## III. SUMMARY JUDGMENT STANDARD

Summary Judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because the Goulds carry the initial burden of proof for their claim, Underwriters are entitled to summary judgment if they can demonstrate that no genuine issue of material fact exists and that the Goulds do not have the necessary evidence to support an essential element of their claim. *Dietz v. Smithkline Beecham Corp.*, 598 F. 3d 812, 815 (11th Cir. 2010). Once Underwriters makes this demonstration of entitlement to Summary Judgment, the Goulds must go beyond the pleadings and show there is a genuine issue of material fact based on *admissible* evidence to avoid summary judgment. *Porter v. Ray*, 461 F. 3d 1315, 1321 (11th Cir. 2006). The Goulds must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F. 2d 984, 986 (11th Cir. 1985) (holding "[c]onclusory allegations without specific supporting facts have no probative value"). In essence, the question becomes "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505,

2512 (1986).

Further, summary judgment is particularly appropriate to resolve questions of insurance coverage. *Technical Coating Applicators, Inc. v. U.S. Fidelity and Guar. Co.*, 157 F.3d 843 (11th Cir. 1998); *DEC Electric, Inc. v. Raphael Construction Corp.*, 558 So. 2d 427 (Fla. 1990); *Jones v. Utica Mutual Ins. Co.*, 463 So. 2d 1153 (Fla. 1985).

## IV. ARGUMENT AND CITATION OF AUTHORITY

As discussed in depth below, the Goulds have done nothing since filing their case and have no witnesses or evidence necessary to create a genuine issue of material fact to support their claims. First, the Goulds cannot meet their threshold burden of proof that they met the conditions precedent to filing this lawsuit, including, but not limited to, providing timely notice of the alleged damages to their home. Second, even if the Goulds had provided a timely notice, they have not come forward with any admissible evidence to demonstrate their home sustained covered damages that occurred during the Policy period, much less any covered loss or damage exceeding the Policy's $180,587.50 Because the Goulds cannot meet any of their burdens of proof in this case, Underwriters are entitled to summary judgment.

### A. The Goulds May Not Come Forward With Undisclosed Witnesses or Evidence To Defeat Summary Judgment

Underwriters anticipate that the Goulds may attempt to proffer never before disclosed witnesses, evidence or expert opinions in a last gasp effort to avoid summary judgment. Again, the Goulds never served Initial Disclosures identifying witnesses or documents they intended to use to support their claims, nor did they ever provide a computation of damages and supporting documents. The Goulds also failed to disclose any experts as required by the Court's Scheduling Order. The Goulds cannot now come forward with any documents,

evidence and/or affidavits of witnesses that were not previously disclosed prior to the July 28, 2021 discovery deadline.

The Federal Rules are clear that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1);[2] *King v. Akima Glob. Servs., LLC*, 323 F.R.D. 403, 408 (S.D. Fla. 2017) (holding that a party may not use documents and witnesses not disclosed in Initial Disclosures). The Southern District of Florida precludes expert witness testimony if the party proffering the testimony fails to comply with the Court's Scheduling Order. *GSG Holding, Inc. v. QBE Specialty Insurance Co.*, No. 15-23385-CIV, 2016 WL 8793341, at *3 (S.D. Fla. Jun. 20, 2016) (prohibiting insured's expert from testifying after violating both the Court's Scheduling Order and Rule 26). The Eleventh Circuit has also routinely upheld the exclusion of witnesses and documents on summary judgment where the non-movant failed to comply with the Initial Disclosure requirements in Fed. R. Civ. Pro. 26(a)(1). *See Rigby v. Philip Morris USA Inc.,* 717 Fed. App'x 834, 835 (11th Cir. 2017) (affirming summary judgment and holding that district court did not abuse discretion by excluding affidavits, without which there were no disputed material facts precluding summary judgment).

The Goulds were initially required under Fed. R. Civ. P. 26(a)(1)(i-iii) to: (1) identify the witnesses they believe have discoverable information about the issues set forth in the Complaint; (2) provide a copy or the description of the documents in its possession or control

[2] In addition, "the burden of establishing that a failure to disclose was substantially justified or harmless rests on the non-disclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed. App'x 821, 825 (11th Cir. 2009) (internal quotation omitted).

that they will use to support their claims; and (3) provide a computation of the damages sought in the case with a copy of the documents upon which the computation is based. The Goulds did none of the above, and they may not do so now to avoid summary judgment. Moreover, the Goulds also failed to disclose any expert witnesses necessary to testify to the scope, cause, and amount of their claims Hurricane Irma loss. Without any admissible evidence, the Goulds cannot meet their burden of proof in this case.

**B. The Goulds' Breach of Their Duties and Obligation Under the Policy Bar Coverage As a Matter of Law**

Underwriters are entitled to summary judgment because the Goulds wholly failed to performed their required duties and obligations in the event of a loss or damage. The Policy requires that the Goulds give Underwriters "prompt" notice of any loss to the property, that they cooperate with Underwriters, and take reasonable measures to protect the property. The Goulds failed to fulfil these duties. The Policy states in part:

> **C. Duties After Loss**
>
> In case of a loss to covered property, we have no duty to provide coverage under this Policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:
>
> 1. Give prompt notice to us or our agent;
>
> ***
>
> 4. Protect the covered property from further damage. The following must be performed:
>
>    a. Take reasonable emergency measures that are necessary to protect the covered property from further damage.
>    b. Keep an accurate record of repair expenses;
>
> 5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory.

7. As often as we reasonably require:
   a. Show the damaged property;
   b. Provide us with records and documents we request and permit us to make copies; and
   c. Submit to examination under oath, while not in the presence of another "insured" and sign the same;

The Policy further states:

**H. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

[SOMF 6]. Under the policy, the Gould's performance of these duties after a claimed loss or damage are a condition precedent for recovery under the Policy. The Gould's failure to fulfil these duties bars any recovery for their claimed Hurricane Irma loss.

Florida law interprets the policy terms "prompt," "as soon as practicable," "immediate," or comparable phrases to mean that notice should be given "with reasonable dispatch and within a reasonable time in view of all of the facts and circumstances of the particular case." *State Farm Mut. Auto. Ins. Co. v. Ranson*, 121 So.2d 175, 181 (Fla. 2d DCA 1960). "Notice is necessary when there has been an occurrence that should lead a reasonable and prudent man to believe that a claim for damages would arise." *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. Dist. Ct. App. 1981). "While the question as to what is a reasonable time, depending as it does upon the surrounding circumstances, is ordinarily for decision by the trier of facts, yet when facts are undisputed and different inferences cannot

reasonably be drawn therefrom, the question is for the court." *Ranson*, 121 So.2d at 182.

Florida Courts have routinely upheld summary judgment for an insured's failure to provide "prompt" notice in hurricane cases where the insured waited until several years passed before notifying the insurance company. See, e.g., *1500 Coral Towers Condo. Ass'n, Inc. v. Citizens Prop. Ins. Corp*., 112 So. 3d 541, at 543-44 (Fla. Dist. Ct. App. 2013) (upholding summary judgment on the insured's failure to give "prompt" notice of roof damage caused by a hurricane where the insured was aware of roof damage one month after the hurricane, but waited more than four years to report the damages because it was unsure if the damages would exceed the policy deductible); *see also Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co*., 599 F. App'x 875, 879 (11th Cir. 2015) (explaining that "prompt" notice is generally a jury question, but "Florida courts have interpreted 'prompt' differently when damage is caused by a known event, such as a hurricane, or when the insured was on-site when readily apparent problems developed"). The Florida Supreme Court has explained that this breach of the duty of notice is a rebuttable presumption of prejudice to the insurer. See *Bankers Ins. Co. v. Macias,* 475 So. 2d 1216 at 1218 (Fla. 1985). The burden is "on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts." *Id*.

Here, the Goulds have no evidence that they timely notified Underwriters of their alleged Hurricane Irama loss to their home. While the Goulds have not identified any witnesses or disclosed any documents in this case, the Goulds testified under oath that they made no effort to notify Underwriters of their alleged damages to their home until January 2020. [SOMF 11]. The Gould's also testified that they made repairs to the roof over several years that they now claimed were caused during Hurricane Irma, yet again made no effort to

notify Underwriters of these alleged damages to their home. They cannot come forward with contradictory testimony to defeat summary judgment that they were on notice of the damages they are now claiming were caused during Hurricane Irma (and more importantly during the Policy period). [SOMF 12]. Just like the cases cited above, the Goulds' failure to provide prompt notice of their now claimed hurricane related damages over several years is per se late notice and presume prejudicial as matter of law.

Moreover, the fact that the Goulds made roof repairs not only confirms they failed to provide prompt notice, Florida courts hold that the Goulds' repairs prior to providing notice prejudicial to Underwriters' ability to investigate their late reported claims. *Kramer v. State Farm Fla. Ins. Co.,* 95 So. 3d 303, 307 (Fla. Dist. Ct. App. 2012) (Finding that since roof tiles were reset prior to the notice of loss or inspection, it was not possible to determine the scope of damage caused by a hurricane); *Hope v. Citizens Prop. Ins. Corp*., 114 So.3d 457 (Fla. 3d DCA 2013) (Finding prejudice to the insurer where homeowner made his own repairs to property following Hurricane Wilma and did not file claim until four years later). Compounding the fact that the Goulds failed to provide notice and made repairs in the intervening years, the Goulds have come forward with no evidence that they made any effort whatsoever to document or itemize the alleged loss or damage.

In short, the Goulds cannot come forward with any evidence to create a genuine issue of material fact that breached a number of their duties and obligations in the event of a loss or damage, including: (1) they failed to provide prompt notice of the alleged Hurricane Irma damages to their home until January 2020 (two and a half years after Hurricane Irma in September 2017; (2) the made repairs to the home they now claim were caused during Hurricane Irma that prohibit Underwriters from investigating the claims; and (3) made no

effort to document or itemize the alleged ongoing damages for nearly three years. Any one of these breaches alone is deemed to have prejudiced Underwriters as a matter of law. Since the Goulds have not come forward with no witnesses, documents, or experts in this case as required by the Federal Rules of Civil Procedure and this Court's Scheduling Order, they have no evidence to rebut the presumption of prejudice and the Court should grant Underwriters' summary judgment motion.

### C. The Goulds Cannot Meet Their Burden of Proof of Demonstrating Covered Damages Caused By a Covered Cause of Loss During the Policy Period

Even if the Goulds could somehow avoid summary judgment based on their failure to comply with their post-loss obligations, the Goulds simply cannot meet their burden of proof as to their breach of contract claim. More specifically, the Goulds cannot come forward with evidence to create a genuine issue of material fact that their home sustained covered damages exceeding the Policy's $180,587.50 wind deductible. Again, Underwriters must point to the fact that the Goulds produced no witness, documents, or experts in this case. Thus, the Goulds have no expert that can testify to the actual damages to their home they claim was caused by a covered loss during Hurricane Irma (i.e. the scope of the alleged damages). This is a two- step process. First, the Goulds must come forward with an itemization (or scope) of the alleged damages claimed. Second, once they makes this showing, the Goulds then must come forward with evidence of the cause of the claimed damages (i.e. a fortuitous cause of loss). The Goulds can do neither.

Indeed, "[a]n insured claiming under an all-risks policy has the burden of proving that the insured property suffered a loss while the policy was in effect." *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 878 (11th Cir. 2020). Florida courts have specifically rejected the

idea that Underwiters, as the insurer, must cover all "losses." *Fayad v. Clarendon National Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005). Rather, all-risk policies "cover all ***fortuitous losses*** or damages other than those resulting from willful misconduct or fraudulent acts." *Id*. at 1085 (emphasis added). Federal courts interpreting Florida all-risk policies have found that "a loss is not considered fortuitous if it results from an inherent defect in the object damaged, from ordinary wear and tear, or from the intentional misconduct of the insured." *Axis Reinsurance Co. v. Resmondo,* 2009 WL 1537903 at *2 (M.D. Fla. June 2, 2009) (*quoting Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 944 F. Supp. 886, 893 (M.D. Fla. 1996)). Thus, to succeed in this action, the Goulds must prove that a fortuitous event during the Policy period caused direct physical damage to the Property. *Peek v. American Integrity Ins. Co. of Florida*, 181 So. 3d 508, 510 (Fla. 2nd DCA 2015); *Mama Jo's, Inc. v. Sparta Ins. Co.*, No. 17-CV-23362-KMM, 2018 WL 3412974, at *8-9 (S.D. Fla. June 11, 2018), *aff'd*, 823 F. App'x 868 (11th Cir. 2020) (holding the "[p]laintiff carries the burden of proving causation to show that there was a direct physical loss and thus coverage under the Policy").

Here, again, as a threshold matter, the Goulds have done nothing since filing this lawsuit. They have not served Initial Disclosures required by the Federal Rules. They have not identified the witnesses and documents they intend to rely upon to prove their case. They have not provided the computation of their alleged damages, nor the documents supporting their claims. The Goulds served no discovery and deposed no witnesses. Most importantly, they have not identified any expert witnesses necessary to provide their case necessary to identify the actual damages to the buildings it claims occurred during the Policy period.

Often, first-party insurance cases turn on causation, meaning the parties dispute whether the cause of the damages claimed by the insured are covered or excluded under the

Policy. That is not the case here. The Goulds have not even come forward with any expert to testify as to the itemization of damages they claim were caused during Hurricane Irma, or more importantly, during the Policy period, for Underwriters to even consider the cause of that damage. For example, the Goulds have not identified or provided any expert to opine as to what portions of the home were allegedly damaged. Without this evidence, the Goulds do not even get to first base and they fail to meet their fundamental burden to avoid summary judgment. *See Mama Jo's Inc.*, 823 F. App'x at 878 (upholding grant of summary judgment where insured lacked expert testimony to prove causation). This is especially true where the Goulds failed to document their damages in any way prior to making repairs and notifying Underwriters of the alleged loss to their home.

Logically, without an expert to testify or identify the actual damages the Goulds claim occurred during the Policy period, no expert can then consider or opine as to the cause of any damage. Crucially, both Florida state and federal courts require insureds to produce a qualified expert witness to testify as to what "caused" direct physical damage to property. *Peek*, 181 So. 3d at 509 (explaining that plaintiff's failure to present expert testimony or other expert evidence failed to establish plaintiff's purported cause of loss); *Mama Jo's, Inc.*, 2018 WL 3412974, at *8-9. Again, without an expert to testify as to what the "direct physical damage to property" is being claimed, no expert can testify as to the cause of those damages. *Id.*, *citing Guinn v. AstraZeneca Pharm. LP*, 602 F. 3d 1245, 1251 (11th Cir. 2010) (affirming district court's grant of summary judgment on the basis of its exclusion of the expert's testimony, where that testimony was the only evidence on the issue of causation). Simply put, without expert testimony as to both the scope and cause of the damage, the Goulds cannot show that Atain breached the terms of the policy. *Id.*, *citing Johnson v. State Farm Fire*

*& Cas. Co.*, 2013 WL 4607548, at *11 (S.D. Ala. Aug. 29, 2013). In fact, this Court has noted that for wind related insurance claims "it is a known fact in cases such as this that expert witnesses are essential to establish the extent of damage caused by a windstorm." *Young v. Lexington Ins. Co.*, 269 F.R.D. 692, 694 (S.D. Fla. 2010). Once more, this is not a case where there is a dispute as to the evidence before the Court as to the scope and cause, the Goulds simply have no evidence whatsoever to create a genuine issue of material fact.

Even if the Goulds had come forward with expert evidence to meet their threshold burden of demonstrating a covered loss that occurred during the Policy period, they have no evidence of the amount of damages that is recoverable under the Policy. As the insured, the Goulds bear the burden of proving their damages exceed the Policy's applicable deductible. *Sunflower Condo. Ass'n, Inc. v. Everest Nat'l Ins. Co.*, No. 19-CIV-80743-RAR, 2020 WL 5757085, at *6 (S.D. Fla. Sept. 28, 2020) (holding "grant of partial summary judgment simply establishes that [the insured] is only entitled to recover damages, if any, in excess of the Policy's hurricane deductibles"). *Citizens Property Insurance Corporation v. Manning,* 966 So. 2d 486 (Fla. 1st DCA 2007) (holding insured has threshold burden of showing loss exceeds a policy deductible and failure to meet that burden was fatal to insured's claim). There can be no dispute here that the Policy's Windstorm and Hail deductible is $180,587.50.[3] [SOMF 3].

The Goulds' Amended Complaint does not alleged any specific damages to their home and they have not come forward with any computation or documentation as to their claimed damages, despite the specific required to do so in their Initial Disclosures. The Goulds first

[3] Florida courts have routinely upheld the application of deductibles, including similar percentage deductibles for certain types of losses like the one here because "the functional purpose of a deductible, which is frequently referred to as self-insurance, is to alter the point at which an insurance company's obligation to pay will ripen." *General Star Indem. Co. v. West Florida Village Inn, Inc.,* 874 So. 2d 26 (Fla. 2d DCA 2004) (finding 2% wind deductible was unambiguous and applied to covered losses). *Int'l Bankers Ins. Co. v. Arnone,* 552 So. 2d 908, 911 (Fla. 1989).

Count in their Complaint appears to seek a ruling as to the damages recoverable under the Policy. As the Goulds have come forward with no claimed damages, the Court's ruling on these issues is likely moot. Nevertheless, to avoid summary judgment, the Goulds must come forward with a genuine issue of material fact that their claims damages exceeds the Policy's deductible.

Underwriters need not even address the actual deductible because the Goulds have no evidence as to the damages recoverable under the Policy whatsoever. Even if they did, the Policy allows the Goulds to choose to receive one of two types of payment, or both. It can choose to receive: (1) the actual cash value ("ACV"), which is the replacement cost minus depreciation; (2) the replacement cost value ("RCV"), which is the replacement cost without the deduction for depreciation; or (3) it can make a claim based on both ACV and RCV if they notified Underwriters of their intent to do so within 180 days of the date of loss (i.e. September 10, 2017). [CITE Policy at 15 of 24]. These are the only measures of damages the Goulds may seek under the Policy without evidence of actual repairs (there is none). *See CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, 843 F. App'x 189, 192 (11th Cir. 2021).

The Eleventh Circuit has recently reiterated that, in order to recover replacement costs under this type of insurance contract, the insured must actually complete the repairs. *CMR Constr. & Roofing, LLC*, 843 F. App'x at 192 (finding exact same policy language "means that [the insurer] was not obligated to pay [the insured] the replacement cost value until [the insured] had actually made the repairs and incurred the costs of doing so"). *See also Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 395 F. App'x 659, 663 (11th Cir. 2010) (finding "Florida courts have upheld similar contracts that expressly require repair before claiming RCV damages"); *Strasser v. Nationwide Mut. Ins. Co.*, 2010 WL 667945, at *2 (S.D. Fla. Feb. 22,

2010). Therefore, the Goulds cannot recover RCV unless they actually repaired the alleged damage. They have no evidence that they have done so and cannot come forward with that evidence at the eleventh hour. In other words, Underwriters could not have breached the insurance contract for not paying replacement costs where no repairs have been made.

Because RCV is unavailable, the only remaining measure of damages is ACV. However, the Goulds may not recover ACV where they "did not and does not seek actual cash value" during the life of the claim nor in any subsequent lawsuit. *See CMR Constr. & Roofing, LLC*, 843 F. App'x at 193. Here, the Goulds Complaint is silent as to their alleged measure of damages, they did not serve their computation of damages in Initial Disclosures, and did not identify any expert witnesses to itemize their damages. In short, the Goulds never sought ACV and has no admissible ACV evidence. Therefore, it cannot rely on any alleged ACV damages to prove its damages exceed the Policy's nearly $200,000 wind deductible. *See Sunflower Condo.*, 2020 WL 5757085, at *6.

As above, the Goulds wholly fail to come forward with any admissible evidence of damages, regardless of whether it is based on RCV, ACV, or any other measure. In other words, the Goulds have no proof whatever of recoverable damages. As a result, they cannot establish another crucial element of their claims and Underwriters are entitled to summary judgment as a matter of alw. *See Sunflower Condo.*, 2020 WL 5757085, at *6.

Even if the Goulds attempted to cure their lack of necessary evidence at this late stage, which they have not done, it is too late. Courts have routinely struck experts when they are not disclosed by the discovery deadline.[4] Courts have found that an untimely expert disclosure

[4] *See GSG Holding, Inc. v. QBE Specialty Insurance Co*., No. 15-23385-CIV, 2016 WL 8793341, at *3 (S.D. Fla. Jun. 20, 2016) (prohibiting insured's expert from testifying after violating both the Court's Scheduling Order and Rule 26); *O'Brien v. NCL (Bahamas) Ltd.*, No. 16-23284-CIV, 2017 WL 6949261 at *1 (S.D. Fla. Oct. 13, 2017) (excluding expert disclosed 5 days after deadline); *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, No. 09-60351-

still make during the discovery period can sometimes be harmless, but that disclosures made after the end of the discovery period are not permitted. *Wilkins v. Montgomery*, 751 F.3d 214, 223 (4th Cir. 2014) *citing Hoyle v. Freightliner,* LLC, 650 F.3d 321, 330 *(*4th Cir. 2011)(finding no abuse of discretion where district court excluded expert declaration when the disclosing party notified his opponent of the declaration "not only after the close of discovery but after [the opponent] had filed its motion for summary judgment"). As such, the Goulds cannot prevail in this case because they cannot prove the essential element of causation needed to carry their initial burden of proof. *See Mama Jo's Inc.*, 823 F. App'x at 878 (upholding grant of summary judgment where insured lacked expert testimony to prove causation). Therefore, Underwriters are entitled to summary judgment.

WHEREFORE, the Underwriters requests that this court grant their Motion for Summary Judgment and enter a Final Judgment in favor of Underwriters, together with any relief the court deems good and proper.

This 9th day of August 2021.

**WOOD, SMITH, HENNING & BERMAN LLP**
1230 Peachtree Street, Suite 925
Atlanta, Georgia 30309
Telephone: 470-552-1152
Fax: 470-552-1151
rzelonka@wshblaw.com
nwood@wshblaw.com
slytle@wshblaw.com

*/s/ Richard E. Zelonka, Jr.*
Richard E. Zelonka, Jr.
FBN: 0656941
Nathan L. Wood
FBN: 0123968

*Counsel for Defendant, Certain Underwriters at Lloyd's, London Subscribing to Policy No. B1180D160620/100NC*

CIV, 2010 WL 1837724, at *4 (S.D. Fla. May 3, 2010) (excluding 4 experts named on the day of deadline); *United States v. Batchelor-Robjohns*, No. 03-20164-CIV, 2005 WL 1761429, at *6 (S.D. Fla. June 3, 2005).

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing ***Motion for Summary Judgment and Incorporated Memorandum of Law*** on all parties of record via CM/ECF:

Alex Stern, Esq.
LITIGATION & RECOVERY LAW CENTER, PL
16375 NE 18th Ave., Ste. 321
North Miami Beach, FL 33162
as@lrlc.legal

This 9th day of August 2021.

**WOOD, SMITH, HENNING & BERMAN LLP**
1230 Peachtree Street, Suite 925
Atlanta, Georgia 30309
Telephone: 470-552-1152
Fax: 470-552-1151
rzelonka@wshblaw.com
nwood@wshblaw.com
slytle@wshblaw.com

*/s/ Richard E. Zelonka, Jr.*
Richard E. Zelonka, Jr.
FBN: 0656941
Nathan L. Wood
FBN: 0123968
*Counsel for Defendant, Certain Underwriters at Lloyd's, London Subscribing to Policy No. B1180D160620/100NC*